OPINION
{¶ 1} Defendant, Joseph L. Erwin, appeals from his conviction and sentence on one count of menacing in violation of R.C. 2903.22(A).
 {¶ 2} On May 9, 2005, Erwin attended a village council meeting at Clifton Opera House. A heated discussion arose between one of Erwin's friends and Patrick Johnson. After the discussion concluded, Erwin followed Johnson down the aisle as Johnson was leaving. According to witnesses, *Page 2 
Erwin began to threaten Johnson with physical violence if Johnson did not leave Erwin's friend alone. Johnson exited the building and called the police. The police went to Erwin's home to investigate the allegations.
 {¶ 3} On May 15, 2005, the State filed a complaint in the Xenia Municipal Court against Erwin for one count of menacing in violation of R.C. 2903.22(A). The trial was scheduled for February 6, 2006. On January 31, 2006, Erwin requested a continuance so that he could take a polygraph test. On February 1, 2006, the State requested a continuance due to the unavailability of a witness. The trial court granted the State's request and rescheduled the trial for March 1, 2006.
 {¶ 4} On February 20, 2006, Erwin filed a letter with the trial court that stated: "Your Honor, I had a court date of Feb. 6 2006 and you granted me a continuance of March 1st 2006 to take a polygraph test to prove my innocens. [sic] My question is would 'Reeder Forenic Service Inc.' 4130 Linden Ave. Dayton Ohio 937-256-3660 be satisfactory to the Court. If not, could you give me the name of a company that would? Thank you Joseph L. Erwin" Judge Goldie responded by writing the following on the bottom of Erwin's letter: "2-21-06 It is pretty late to ask. Trial will be on 3-1-06 as scheduled. He can bring in proof of polygraph from Reeder."
 {¶ 5} The trial proceeded on March 1, 2006 before a visiting judge. During the State's case-in-chief, Erwin raised the issue of the polygraph test results. The State objected to the admissibility of the polygraph test results. *Page 3 
The visiting judge ruled that the test results were inadmissible. Erwin argued that Judge Goldie had approved the use of the polygraph test results in her February 21, 2006 note at the bottom of his February 20, 2006 letter to the trial court. The State and the visiting judge agreed that Judge Goldie's note was confusing, but both the visiting judge and the State explained that polygraph test results are inadmissible without a written stipulation.
 {¶ 6} The visiting judge gave Erwin the option of accepting a mistrial and then proceeding with trial before Judge Goldie, who could clarify what she meant in her February 21, 2006 handwritten note. Erwin chose this option and the visiting judge granted a mistrial. The trial was re-scheduled for March 8, 2006 before Judge Goldie. At trial, prior to any witness testimony, Judge Goldie overruled Erwin's motion to admit the polygraph test results. Judge Goldie also stated, however, that the polygraph issue would be revisited if Erwin prevailed at trial.
 {¶ 7} Erwin was found guilty of one count of menacing. He was fined $250.00 plus costs and was ordered to have no contact with Patrick Johnson for a period of five years. Erwin was sentenced to thirty days in jail, which were suspended on the condition that Erwin has no further violations over the next five years, and he was placed on two years probation. Erwin filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 8} "IRREGULARITIES IN THE PROCEEDINGS, IN THE ORDERS OF *Page 4 
THE TRIAL COURT AND IN THE RULINGS OF THE COURT PREVENTED THE DEFENDANT FROM HAVING A FAIR TRIAL AND DENIED HIM PROCEDURAL AND SUBSTANTIVE DUE PROCESS."
 {¶ 9} Erwin argues that Judge Goldie's confusing statements regarding the admissibility of the polygraph test results denied him substantive and procedural due process. Erwin points to Judge Goldie's February 21, 2006 handwritten note and her statement at the March 8, 2006 trial that the polygraph may be revisited at the conclusion of the trial if Erwin prevailed. Further, Erwin argues that the trial court's failure to rule on the admissibility of the polygraph test prior to the trial prevented Erwin from adequately preparing for trial and assessing his need for legal representation. We disagree.
 {¶ 10} It is well-settled that the results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment only if the prosecuting attorney, defendant, and his counsel sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state. State v. Souel (1978),53 Ohio St. 2d 123, 372 N.E.2d 1318, syllabus. "Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept *Page 5 
such evidence." Id.
 {¶ 11} The State did not stipulate to Erwin's submission to the test, the subsequent admission at trial, or the examiner's opinion. Therefore, the trial court properly excluded the polygraph results from trial. If Erwin had hired counsel, he likely would have avoided the monetary costs to take the polygraph, because counsel presumably would have explained Ohio law on the admissibility of polygraph test results. Individuals who represent themselves at trial are held to the same standards as those individuals who are represented by counsel. The trial court did not prevent Erwin from seeking legal representation.
 {¶ 12} Moreover, at the March 1, 2006 trial, the visiting judge informed Erwin of the law in Ohio regarding the admissibility of polygraph results and gave Erwin the option of a mistrial. Consequently, as of March 1, 2006, a week before Erwin appeared at trial before Judge Goldie, Erwin was well aware of the likelihood that his polygraph results would be inadmissible at trial. It was then incumbent on Erwin to seek a continuance and/or seek counsel in order to prepare a defense that was not based solely on inadmissible polygraph test results. Upon this record, we cannot find that Erwin was denied procedural or substantive due process.
 {¶ 13} We do agree, however, that Judge Goldie's February 21, 2006 note at the bottom of Erwin's February 20, 2006 letter could have led Erwin to believe that he would be able to use the polygraph test results at the March 1, *Page 6 
2006 trial. In reliance on Judge Goldie's note, Erwin expended $350.00 on the polygraph test. Erwin explained that he would not have spent money on a polygraph test if he had known it would be inadmissible at trial. At the March 1, 2006 trial, the visiting judge and the State agreed that Judge Goldie's February 21, 2006 handwritten note was less than clear. Therefore, in consideration of the trial judge's vague and confusing statements regarding the polygraph results, we will reverse and modify the imposition of the $250 fine pursuant to the authority of this court to modify a judgment of the trial court. Section 3(B)(2), Article IV, Ohio Constitution; App. R. 12(B).
 {¶ 14} The $250.00 fine imposed on Erwin is reversed. The judgment of the trial court will be affirmed in all other respects.
WOLFF, P.J. and BROGAN, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1